[Cite as *State v. Twitty*, 2012-Ohio-5290.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98143

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TIMOTHY TWITTY

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-552310

**BEFORE:** Sweeney, P.J., Cooney, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 15, 2012

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, Ohio   44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:   Edward D. Brydle
Assistant County Prosecutor
Ninth Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

JAMES J. SWEENEY, P.J.:

{¶1} Defendant-appellant Timothy Twitty appeals his convictions for aggravated robbery with a firearm specification and possession of criminal tools. Defendant further asserts that the trial court improperly imposed postrelease control. For the reasons that follow, we affirm.

{¶2} On July 8, 2011, employees from a pizza shop located at East 74th and Harvard Avenue reported an armed robbery that had occurred at the store at approximately 5:30 p.m. According to the record, this pizza location has been robbed many times. Some employees testified that it had been robbed at least 13 times. The store is apparently equipped with three video cameras. Police were unsuccessful in their efforts to obtain video of the July 8, 2011 robbery and none was presented at trial. According to the investigating detective, it did not exist.

{¶3} Employees described the robber as a dark-skinned, tall male, who was wearing a white shirt and white shorts. The man had a black shirt covering his head but the employees were still able to see his face.

{¶4} The store manager, Deidra, spoke briefly with the man before seeing a revolver. The man demanded money, and another employee, Sheila, opened the cash register and gave it to him. It was established that the cash drawer contained approximately $100, including change. The robber took the money from the cash register, which consisted of mostly single dollar bills.

**{¶5}** Two male employees were also present during the robbery: Billy and Jermaine. After receiving the cash, the man instructed Deidra that she should not run away when someone is pointing a gun. Then, the man walked out of the store.

**{¶6}** Billy left the store after the man and was intent on putting a stop to the robbery. Billy's girlfriend, Crystal, was there to pick him up from work. Billy and Crystal followed the robber who had gotten into a Black SUV. Billy was talking to Deidra on the phone and gave her the license plate number. Billy and Crystal then went home. About an hour later, police arrived and took Billy to an address in Euclid where he identified defendant from a cold stand as the person who had robbed the pizza store. Police found $88 in defendant's pocket, consisting of mostly single dollar bills.

**{¶7}** Police responded to the pizza store, and a K-9 unit located the suspect vehicle parked at defendant's residence in Euclid. Defendant was outside with three other males listening to music. When backup arrived, the males were confronted and detained. Defendant was wearing clothing similar to that of the suspect. The other three males were defendant's relatives whom he had recently picked up from his aunt's house in Cleveland Heights. The testimony varied as to when defendant arrived at his aunt's house, estimated at sometime between 6:00 p.m. and 7:00 p.m. Some of the witnesses believed defendant had just picked his truck up from being serviced at his uncle's auto repair shop.

**{¶8}** The four men arrived at defendant's house shortly before police converged on them. The witnesses stated that they were listening to the radio and defendant was

removing clothes from his car. The men were described as being confused and upset by the police presence. Defendant's vehicle and part of his house were searched. Police did not find any firearms or weapons.

{¶9} Defendant contacted Detective Kraynik and went to the police station with his parents to make a statement about the incident. Det. Kraynik described the statement as "very confusing, very disjointed" but from it, the detective gleaned two main facts: (1) defendant had picked up his vehicle from a tire shop on Superior between 5:00 p.m. and 6:00 p.m. on July 8, 2011, with a man named Delayveon; and (2) thereafter defendant immediately went to his residence on Rayburn. Det. Kraynik ended the interview by informing defendant he was arrested because an employee followed him, obtained his license plate number, and then positively identified him as the robber.

{¶10} The defense asked Det. Kraynik if he was aware that defendant has tattoos on both arms, and the detective confirmed that defendant does have tattoos on his arms. The defense asked if defendant could "display those" to the jury, and the trial court said, "Not at this time * * * At a proper time you can." The defense then continued cross-examining the detective and established that defendant had these tattoos on the date of the offense. It was further established that the robber had been wearing a short-sleeve shirt.

{¶11} Det. Kraynik did not recall any of the eyewitnesses mentioning tattoos. None of the witnesses were asked nor did they indicate whether the robber had any tattoos.

**{¶12}** Both Billy and Deidra got a good look at the robber's face. Both positively identified defendant as the robber from photo arrays that were presented to them. They were 100% certain of their identifications.

**{¶13}** One of defendant's relatives spoke with him about the charges and stated that defendant denied committing the offense. Defendant also told this relative that the robber on the videotape did not have any tattoos. Defendant has tattoos on his arms.

**{¶14}** The State rested, and the trial court denied defendant's motion for acquittal.

**{¶15}** The defense presented its case. Sherman Edwards testified that he owns an auto repair shop on Superior Avenue. Defendant dropped his car off for repairs some time before July 8, 2011. Defendant picked the car up on July 8, 2011. Defendant called Sherman around 5:15 p.m., met him at a barber shop around 5:30 p.m., and they walked to and arrived at the repair shop around 6:00 p.m. Defendant paid for the repairs with cash.

**{¶16}** Sherman stated another man was with defendant and drove the repaired car away. Defendant drove his sister's car away from the shop. Sherman described the man who was driving defendant's car as dark-skinned and "baldheaded." He had not seen the man before.

**{¶17}** Sherman's fiancée, who is defendant's aunt, called him and indicated that defendant had been at her house around 6:45 p.m. Around 8:00 p.m., Sherman was notified that the police were at defendant's house.

**{¶18}** Michael Walker testified for the defense. He knows defendant through an early intervention program for curfew intervention. Defendant completed the intervention program and became a member of the Cleveland Public Theater Group. Defendant would act as a spokesperson for intervention in middle schools. According to Walker, defendant has helped kids and he described defendant as "faithful about not committing crimes, and violate [sic] crimes in particular." He does not believe defendant is the type of person who would commit an armed robbery or who would have a weapon. Walker did not see defendant on July 8, 2011.

**{¶19}** After the defense rested, defendant renewed his motion for acquittal, which the trial court denied. Defendant was convicted of both counts and the firearm specification. The jury further found that defendant's 1992 Chevrolet automobile was used in the commission of the crime and was subject to forfeiture.

**{¶20}** Defendant addressed the court at sentencing. Michael Walker and Alicia Petrella also addressed the court on defendant's behalf. Both work for the Partnership for a Safer Cleveland and both indicated that they do not believe defendant committed the offense. The trial court indicated that "the evidence clearly indicated that [defendant] was guilty." The court summarized the evidence and described it as "overwhelming." A corrections officer also addressed the court on defendant's behalf.

**{¶21}** The State asked the trial court to impose the maximum sentence.

**{¶22}** The court imposed a four-year prison sentence for aggravated robbery plus three years consecutive on the firearm specification. The court imposed a concurrent

11-month prison sentence for the possession of criminal tools conviction. The trial court instructed that upon his release from prison, "Ohio Parole Board will impose a period of postrelease control of five years. There will be no reduction. They may impose conditions and sanctions." Defendant was further advised that a post release control violation could result in his remand to prison "for an additional 50 percent of your original sentence."

**{¶23}** Defendant appeals assigning the following errors for our review:

ASSIGNMENT OF ERROR I:

The trial court erred in violation of the Sixth and Fourteenth Amendments to the United States Constitution, and Article 1, Section 10 of the Ohio Constitution which provide rights to confrontation and cross-examination when it did not permit a witness to completely testify about appellant's identifying characteristics.

**{¶24}** Defendant asserts that his right to confrontation was violated when the trial court did not allow him to display his arm tattoos to the jury during Det. Kraynik's testimony. The record reflects that the defense thoroughly cross-examined Det. Kraynik regarding defendant's arm tattoos. Det. Kraynik acknowledged that defendant has arm tattoos, that he had personally observed them, and that they were present on the date the offense occurred. The detective confirmed that the robber had on a short sleeve shirt and none of the eyewitnesses mentioned seeing any tattoos.

**{¶25}** We have applied the abuse of discretion standard to determine whether error occurred as a result of the trial court's denial of a defendant's request to publish his

or her physical characteristics to the jury. *See State v. Tagliaferro*, 8th Dist. No. 86587, 2006-Ohio-1364, ¶ 22; *see also State v. Lundgren*, 73 Ohio St.3d 474, 487, 1995-Ohio-227, 653 N.E.2d 304 (1995), quoting *O'Brien v. Angley*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490 (1980) ("[t]he scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge").

{¶26} The trial court instructed defense counsel that it would not allow defendant to display his tattoos during Det. Kraynik's testimony. Specifically, the trial court indicated he could not do it "at this time." Defense made no attempt to show his tattoos during the testimony of the eyewitnesses to the robbery or at any other time during the course of the trial. While identification was an issue, the relevance of defendant's tattoos is questionable. There is no evidence to indicate that the perpetrator did not have tattoos. The eyewitnesses did not indicate whether the suspect had tattoos and it does not appear from this record that they were ever asked that question.

{¶27} In this case, the jury was presented with substantial and sufficient evidence identifying defendant as the person who robbed the pizza shop. The store manager and Billy both saw the robber's face and were certain it was defendant. Billy actually followed the robber out of the store, and saw him get into an SUV that Billy followed. Billy was able to provide the license plate of the vehicle to the store manager who related it to police. The vehicle was traced to defendant, who was found at his residence.

Defendant was wearing clothing that matched the description of the robber's attire. Billy positively identified defendant as the robber that night.

**{¶28}** The trial court's ruling that prohibited defendant from displaying his tattoos to the jury during Det. Kraynik's testimony was not an abuse of discretion and was not, in any case, prejudicial to defendant. This assignment of error is overruled.

ASSIGNMENT OF ERROR II:

The State failed to present sufficient evidence to sustain a conviction against appellant.

ASSIGNMENT OF ERROR III:

Appellant's convictions are against the manifest weight of the evidence.

**{¶29}** An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

**{¶30}** To warrant reversal of a verdict under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id*.

**{¶31}** Under both of these assigned errors defendant contends that the evidence was insufficient or his convictions were against the manifest weight of the evidence in establishing that he was the person who committed the crimes.

**{¶32}** Defendant points to minor inconsistencies in the testimony of the eyewitnesses to the robbery. While Billy and Deidra differed as to whether the robber was wearing a baseball hat, they both indicated that the person had a shirt on his head. Billy followed the robber out of the store and continued to follow him by car. Billy obtained the license plate number of the suspect's vehicle, which was traced to defendant. Shortly after the robbery occurred, defendant was found with $88 in his pocket and was wearing the same type of clothing as the perpetrator.

**{¶33}** As set forth previously, it is not particularly relevant that defendant had tattoos because the eyewitnesses did not address this feature one way or the other. Defendant also complains that there was no videotape evidence presented, however, Det. Kraynik testified that none existed. The record establishes that the police searched both defendant's vehicle and part of his house and did not recover a gun. However, the eyewitnesses testified that the robber did brandish a gun. Deidra testified that the man said, "you're not supposed to run when a person got a gun on you."

**{¶34}** Billy positively identified defendant as the person who robbed the pizza store that night. He and Deidra also identified defendant from a photo array presented to them approximately three months later. Both were 100% certain of their identifications. Both witnesses saw the robber's face.

**{¶35}** Finally, defendant contends that the evidence establishes he was somewhere else when the robbery occurred. Some of defendant's relatives and acquaintances testified that he was with them sometime between 6:00 p.m. and 7:00 p.m. The only witness to place defendant somewhere besides the pizza shop around 5:45 p.m. was Sherman. Sherman testified that defendant came with an unidentified, baldheaded man to pick up his SUV from Sherman's repair shop at that time. Conversely, the pizza shop employees said defendant was robbing the pizza store at 5:30 p.m. It was within the province of the jury to resolve these types of conflicts in the evidence. There was sufficient evidence to support defendant's convictions, which were not against the manifest weight of the evidence.

**{¶36}** These assignments of error are overruled.

ASSIGNMENT OF ERROR IV:

Appellant is entitled to a de novo sentencing hearing as the court did not properly impose a mandatory term or period of postrelease control at the sentencing hearing.

**{¶37}** Defendant contends that he was not informed of the mandatory nature of his postrelease control term. As such, defendant contends he is entitled to a de novo sentencing hearing. Defendant, however, acknowledges that recent case law in this area does not require a de novo sentencing hearing and indicates he is raising this issue in order to preserve it for appellate review. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 29 (when postrelease control is improperly imposed,

"the new sentencing hearing to which an offender is entitled * * * is limited to proper imposition of postrelease control.")

{¶38} The State asserts that postrelease control was properly imposed because the trial court's language sufficiently apprised defendant that it was mandatory.

{¶39} In *State v. Tucker*, 8th Dist. No. 95289, 2011-Ohio-1368, ¶ 9, this court held:

> Although the trial court did not use the word "mandatory" in describing the term of postrelease control, the trial court's language was sufficient to apprise Tucker of its mandatory nature. R.C. 2967.28(B) did not use the word "mandatory," but stated that the sentence "*shall include a requirement* that the offender be subject to a period of post-release control." (Emphasis added.) The trial court indicated that postrelease control "will" be imposed. It did not say that it "might" be imposed. The word "will" leaves no room for discretion or any other possibility.

{¶40} In this case, the trial court advised defendant that upon his release from prison, the parole board "will impose a period of post release control for five years. There will be no reduction." This language properly informed defendant that he will be on postrelease control for a period of five years, i.e., it was mandatory.

{¶41} This assignment of error is overruled.

{¶42} Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having

been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

—————

JAMES J. SWEENEY, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
COLLEEN CONWAY COONEY, J., CONCURS IN JUDGMENT ONLY